UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 06-299-JBC

JUSTIN CRAWFORD, ET AL.,                                                                  PLAINTIFFS,

V.                          MEMORANDUM OPINION AND ORDER

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT,                                                                          DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the the plaintiffs' motion for the Rule 23 class action and the FLSA collective action to proceed simultaneously (DE 38) and the defendant's motion to dismiss the plaintiffs' state law claims on the basis of Kentucky sovereign immunity law (DE 40). The court, having reviewed the record and being otherwise advised, will grant the defendant's motion to dismiss the plaintiffs' state law claims (DE 40). Therefore, the court will deny as moot the plaintiffs' motion for the Rule 23 class action and the FLSA collective action to proceed simultaneously (DE 38).

I.      Background

The plaintiffs are current and former employees of the defendant, the Lexington-Fayette Urban County Government ("LFUCG"), at LFUCG's Division of Community Corrections ("DCC"). In their complaint, the plaintiffs allege that "the DCC has engaged in long-standing, widespread, and multiple violations of the Fair Labor Standards Act . . ., 29 U.S.C. § 201, et seq., and of the Kentucky Wages

and Hours Act . . ., KRS Chapter 337." (DE 48-3 at 5.) Pursuant to 29 U.S.C. § 216(b), the plaintiffs seek to pursue their FLSA claims as a collective action. *Id.* at 25. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs seek to pursue their Kentucky Wages and Hours Act claims as a class action. *Id.* "The principal difference between FLSA class actions and Fed. R. Civ. P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003).

**II.   The Defendant's Motion To Dismiss the Plaintiffs' State Law Claims**

"To resolve this case," this court must "cautiously venture into the dense tangle of fictions shrouding the doctrine of sovereign immunity." *Benning v. Board of Regents*, 928 F.2d 775 (7th Cir. 1991). "From birth, the States and the Federal Government have possessed certain immunities from suit in state and federal courts." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) (citing, inter alia, *Alden v. Maine*, 527 U.S. 706 (1999)). For Kentucky and other states, "that immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Ernst*, 427 F.3d at 758; *see also Alden*, 527 U.S. at 713 (stating that "[t]he sovereign immunity of the states neither derives from, nor is limited by, the terms of the Eleventh Amendment" but is rather "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today"). The immunity of states from state law claims in federal courts comes with

several exceptions.  For example, a state "may elect to waive that immunity through legislation, or through its conduct in litigation." *Ernst*, 427 F.3d at 758 (internal citations omitted).

"Kentucky counties are cloaked with sovereign immunity" under Kentucky law "by virtue of [their] status as an arm or political subdivision of the Commonwealth." *Lexington-Fayette Urban County Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) (citing *Monroe County v. Rouse*, 274 S.W.2d 477, 478 (Ky. 1955)).  Moreover, the Kentucky General Assembly "specifically preserved the sovereign immunity of a county" which, like LFUCG, has "adopt[ed] an urban county form of government . . . ." *Smolcic*, 142 S.W.3d at 132-33 (citing Ky. Rev. Stat. Ann. § 67A.060(1)).  Furthermore, the sovereign immunity of Kentucky counties under Kentucky law "is not a creation of the courts and can only be waived by the General Assembly." *Smolcic*, 142 S.W.3d at 132 (citing, inter alia, *Rouse*, 274 S.W.2d at 478).  Therefore, in order to determine whether the plaintiffs' state law claims against LFUCG are barred, the court must determine whether the Kentucky legislature has expressly waived the sovereign immunity of Kentucky counties for the plaintiffs' state law claims. *E.g.*, *Tiller v. Univ. of Ky.*, 55 S.W.3d 846, 850 (Ky. Ct. App. 2001).

In general, sovereign immunity can be waived only "where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" *Withers v. Univ. of Ky.*, 939

3

S.W.2d 340, 346 (Ky. 1997) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)); *see also Dep't of Corr. v. Furr*, 23 S.W.3d 615, 616 (Ky. 2000) (stating that "[t]he line demarcating where the doctrine of sovereign immunity applied and where it did not apply was long drawn in shifting sands before we chiseled the line in stone in *Withers*"). As stated above, the plaintiffs' state law claims are based on "the Kentucky Wages and Hours Act . . ., KRS Chapter 337," which LFUCG allegedly violated by "willfully . . . refusing to pay overtime or any other compensation" to the plaintiffs "for the time which they spend working and on duty beyond forty (40) hours per week . . . ." (DE 48-3 at 29.) Because Kentucky courts have stated that "KRS Chapter 337 contains no waiver of immunity for wage discrimination claims against the Commonwealth[,]" the plaintiffs' state law claims against LFUCG would seem to be barred by Kentucky sovereign immunity law. *Tiller*, 55 S.W.3d at 850.

The plaintiffs suggest that the reasoning of the Kentucky Court of Appeals in *Tiller* was mistaken, and in any event they contend that it should not control the outcome of this case.[1] First, they argue that the Kentucky Wages and Hours Act

---

[1] More specifically, the plaintiffs claim that this statement from *Tiller* "only makes sense if viewed as referring to the categories of enumerated state government employees explicitly excluded from the Kentucky Act in [Ky. Rev. Stat. §] 337.010(2)(a)(9) . . . ." (DE 45-1 at 10 n.3.) But the plaintiffs provide no explanation to support this interpretation. In *Tiller*, the Kentucky Court of Appeals stated broadly, without any qualification, that "KRS *Chapter* 337 contains no waiver of immunity for wage discrimination claims against the Commonwealth." *Tiller*, 55 S.W.3d at 850 (emphasis added). Thus, there is no reason to interpret this statement from *Tiller* as anything less than a sweeping pronouncement on the scope of all wage discrimination claims under the Kentucky Wages and Hours Act.

4

actually provides at least three limited waivers of sovereign immunity, all of which apply to their claims in this case. Second, they argue that because this case is in federal court, federal law on sovereign immunity governs the analysis of the sovereign immunity issue, and they further argue that federal sovereign immunity law does not bar their state law claims. Third, the plaintiffs argue that by removing this case to federal court, LFUCG has waived its sovereign immunity defense. These arguments are reviewed below.

### A.   Does the Kentucky Wages and Hours Act Waive LFUCG's Immunity?

First, the plaintiffs claim that the Kentucky Wages and Hours Act broadly defines "employer" and "employee."[2] At the same time, the plaintiffs claim that

---

The plaintiffs also suggest that this statement in *Tiller* is not controlling because the Kentucky Court of Appeals "cited no legal authority to support this single assertion." (DE 45-1 at 10 n.3.) In addition, this court observes that *Tiller*'s sovereign immunity holding dealt with the Kentucky Civil Rights Act, not the Kentucky Wages and Hours Act. *See Tiller*, 55 S.W.3d at 850 (stating that "a review of the record shows that [the plaintiff] did not bring her claims under KRS Chapter 337, but under the Kentucky Civil Rights Act, for which sovereign immunity is expressly waived"). Accordingly, this court recognizes that the relevant portion of *Tiller* may only be dicta, and therefore the court has considered the substance of the plaintiffs' arguments.

At the same time, this court is ever mindful of the importance of comity and the right of Kentucky courts to resolve questions of Kentucky law. The need for comity is even more pressing than usual in this matter because Kentucky courts have long "struggled with whether various governmental entities are entitled to the protection of sovereign immunity, and of those which are, whether statutes or conduct of the immune entity amount to an express or an implied waiver." *Withers*, 939 S.W.2d at 342. Accordingly, even if this statement from *Tiller* is only dicta, it is highly persuasive dicta, and the plaintiffs have not provided this court with sufficient reasons to abandon it.

[2] More specifically, the Kentucky statute defines an employer as "any person . . . who employs an employee and . . . any person . . . acting directly or indirectly

the statute specifically excludes certain categories of state workers from the category of protected "employees," see Ky. Rev. Stat. Ann. § 337.010(2)(a)(9), but it does not specifically exclude the plaintiffs. The plaintiffs imply that by broadly defining the class of protected employees, while specifically exempting a few classes of state workers, the Kentucky legislature also intended to waive sovereign immunity for claims brought by all other classes of state workers. This attenuated conclusion does not meet the "most express language" or "overwhelming implication" standard expressed in *Withers*, *Jordan*, and elsewhere, and it does not justify a waiver of LFUCG's sovereign immunity for the plaintiffs' state law claims.

Second, the plaintiffs argue that several provisions of Ky Rev. Stat. §§ 337.285 and 337.385 waive LFUCG's sovereign immunity. More specifically, the plaintiffs point out that Ky. Rev. Stat. § 337.285(4), which requires most employers to provide time-and-a-half compensation for employees who work in excess of forty hours a week, refers to "county employees" in several subsections and provides for them to receive "compensatory time in lieu of overtime pay . . . ." Because Ky. Rev. Stat. § 337.385(1) "authorizes an uncompensated or undercompensated employee to sue the employer in 'any court of competent jurisdiction' for the amount due and unpaid," see *Parts Depot, Inc. v. Beiswenger*,

---

in the interest of an employer in relation to an employee . . . ." Ky. Rev. Stat. Ann. § 337.010(1)(d). The statute also defines an employee as "any person employed by or suffered or permitted to work for an employer." Ky. Rev. Stat. Ann. § 337.010(1)(e).

6

170 S.W.3d 354, 358 (Ky. 2005), the plaintiffs argue that the Kentucky Wages and Hours Act clearly waives sovereign immunity for county employees such as themselves. But as LFUCG points out, Ky. Rev. Stat. § 337.385(1) authorizes employee actions only against employers who pay "less than [the] wages and overtime compensation to which such employee is entitled[,]" and therefore, it contemplates only private "action[s] commenced to recover such unpaid wages or liquidated damages." Accordingly, this legislative waiver argument does not meet the "most express language" or "overwhelming implication" standard expressed in *Withers*, *Jordan*, and elsewhere, and it does not provide this court with sufficient grounds to reject the clear direction of the Kentucky Court of Appeals in *Tiller*.

Third, the plaintiffs argue that various administrative regulations waive LFUCG's sovereign immunity for their claims under the Kentucky Wages and Hours Act. It bears repeating, however, that the sovereign immunity of Kentucky counties under Kentucky law "can only be waived by the General Assembly." *Smolcic*, 142 S.W.3d at 132 (citing, inter alia, *Rouse*, 274 S.W.2d at 478); *see also Furr*, 23 S.W.3d at 616 (also recognizing that principle). Accordingly, the regulations cited by the plaintiffs cannot waive LFUCG's sovereign immunity under Kentucky law from the plaintiffs' state law claims.

**B.     Do General Principles of Federal Sovereign Immunity Law Waive LFUCG's Immunity from the Plaintiffs' State Law Claims?**

The plaintiffs assert that because this case "is presently in federal court, the issue properly centers on whether LFUCG is entitled to sovereign immunity as

7

viewed *under federal law*, not state law." (DE 45-1 at 6.) But the issue is not so simple. "Under the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law." *Benning*, 928 F.2d at 777-78 (citing, inter alia, *Martinez v. California*, 444 U.S. 277 (1980), *Gerr v. Emrick*, 283 F.2d 293 (3d Cir. 1960), and *Zeidner v. Wulforst*, 197 F. Supp. 23 (E.D.N.Y. 1961)); *see also Gray-Hopkins v. Prince George's County*, 309 F.3d 224, 231-32 (4th Cir. 2002) (applying *Erie* in order to determine the right to an interlocutory appeal from the denial of a claim of governmental immunity under Maryland State law).[3] Thus, the mere fact that this case is being heard in federal court will not prevent the application of Kentucky sovereign immunity law to the plaintiffs' claims under Kentucky law. *See, e.g.*, *Doe v. Patton*, 381 F. Supp. 2d 595, 602 (E.D. Ky. 2005) (holding that "with regard to the *state law claims*, Kentucky's extension of sovereign immunity is effective") (E.D. Ky. 2005); *see also Criswell v. Wayne County*, 165 F.3d 26 (Table), 1998 WL 598739, at *7 (6th Cir. 1998) (holding that some pendent "state law claims against the state . . . are barred by state sovereign immunity").

The plaintiffs have argued for a "unified immunity" concept, rejecting any

---

[3] The Sixth Circuit squarely addressed this point in a short opinion over forty years ago. In *West Pennsylvania National Bank v. Ross*, 345 F.2d 525, 526 (6th Cir. 1965), the Sixth Circuit considered "[t]he sole question" of whether a district court "erred in ruling that the County Commissioners are not amenable to a wrongful death action" brought in federal court on the basis of diversity jurisdiction. To resolve this question, the Sixth Circuit held that it "must apply the law of Ohio. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)." *Ross*, 345 F.2d at 326.

8

separation between Eleventh Amendment immunity and the sovereign immunity defined by the Kentucky legislature and Kentucky courts for claims arising under Kentucky law. But this argument rests on a misinterpretation of the relevant cases.[4] Contrary to the plaintiffs' assertion, there is widespread agreement that

---

[4] In particular, the plaintiffs cite *Alden v. Maine* for the proposition that the "sovereign immunity of a state is the same immunity whether asserted in state or federal court." (DE 45-1 at 2.) Therefore, because this case "is presently in federal court," the plaintiffs claim that this court's inquiry "properly centers on whether LFUCG is entitled to sovereign immunity as viewed *under federal law*, not state law." (DE 45-1 at 3.) Accordingly, the plaintiffs suggest that the limits of sovereign immunity under the Kentucky Wages and Hours Act, as articulated by the Kentucky legislature and by Kentucky courts, are essentially irrelevant to the analysis of this issue. Because the plaintiffs also relied upon this interpretation of *Alden* at oral argument, the court will address it at some length.

In *Alden*, the Supreme Court held "that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." 527 U.S. at 712. That holding was based in large part on the Court's express recognition of the fact that "Congress cannot abrogate the States' sovereign immunity in federal court . . . ." *Id.* at 752. But this, of course, is exactly what the plaintiffs urge the court to do in this case: they have asked this court to abrogate LFUCG's sovereign immunity under Kentucky law, based solely on the fact that this case is currently in federal court. In other words, the plaintiffs would have this court rely upon *Alden* to overturn the very proposition relied upon by the Supreme Court in *Alden* as a self-evident justification for its holding.

As the Supreme Court has recognized in *Alden* and elsewhere, "[b]y 'splitting the atom of sovereignty,' the Founders established 'two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it.'" *Alden*, 527 U.S. at 751 (quoting *Saenz v. Roe*, 526 U.S. 489, 504 n.17 (1999)). Accordingly, when this court considers the plaintiffs' claims based on Kentucky law, it must analyze LFUCG's potential immunity to their Kentucky claims under Kentucky law because these claims, and this potential immunity, arise under a different set of rights and obligations than the plaintiffs' federal claims.

In reaching this conclusion, this court does not suggest that Kentucky and the other states have "two kinds of immunity against private suit that it may assert: (1) its basic or inherent immunity from private suit which it may assert in any court; and (2) its Eleventh Amendment forum immunity from suit in federal

state rules of sovereign immunity govern in federal court on issues related to alleged violations of state law.  *See, e.g.*, *Buchanan v. Williams*, 434 F. Supp. 2d 521, 533-34 (M.D. Tenn. 2006) (analyzing whether the Tennessee legislature had waived Tennessee's sovereign immunity for a plaintiff's claims under Tennessee law); *Hackett v. Fulton County Sch. Dist.*, 238 F. Supp. 2d 1330, 1367 (N.D. Ga. 2002) (holding that a defendant school district "is immune from suit on plaintiff's state law claims" because the plaintiff "failed to identify any legislative act" by the state of Georgia "that specifically states that sovereign immunity is waived").  Therefore, the court has applied the law of sovereign immunity as articulated by the Kentucky legislature and by Kentucky courts to the plaintiffs' state law claims.

### C. Did LFUCG Waive Its Sovereign Immunity From the Plaintiffs' State Law Claims by Removing This Case?

Finally, citing *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the plaintiffs argue that even if LFUCG were entitled to sovereign immunity under

---

court."  *Meyers v. Texas*, 410 F.3d 236, 250 (5th Cir. 2005).  Such a suggestion would be a misinterpretation of *Alden* and well-established principles of sovereign immunity doctrine.  In *Alden*, the Supreme Court

> made clear . . . that there is no such thing as an Eleventh Amendment immunity separate and apart from state sovereign immunity, that a state's sovereign immunity from suit is now and always has been inherent within its sovereignty, and that the Eleventh Amendment did not create any new immunity but merely overruled the Supreme Court's erroneous decision in *Chisholm v. Georgia*.

*Meyers*, 410 F.3d at 251 (citing *Alden*, 527 U.S. at 713-27).  Rather, this court's findings in this case are based on its recognition that it cannot interfere with the limits of Kentucky's sovereign immunity from claims based on Kentucky law, absent a clear act of waiver.

Kentucky law on the plaintiffs' state law claims, LFUCG's "removal of the suit . . . to federal court in this instance has waived such immunity." (DE 45-1 at 6.) *Lapides* is not directly controlling for at least two reasons. In *Lapides*, the Supreme Court stated that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying" that the very power relied upon for removal "extends to the case at hand." That anomaly is not present in this case: LFUCG argues only that Kentucky *state* sovereign immunity applies to the plaintiffs' *state law* claims after removal to federal court; its current arguments do not address the plaintiffs' FLSA claims. Moreover, in *Lapides*, the Supreme Court specifically declined to "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court." *Id.* at 617-18. *Lapides*, therefore, does not directly control this issue.

The Sixth Circuit has also not directly addressed this issue, and therefore the parties have submitted conflicting opinions from different jurisdictions on this issue. LFUCG relies upon *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005), which is directly on point. In *Stewart*, as "an issue of first impression in the federal circuits[,]" a Fourth Circuit panel considered "whether a state waives its sovereign immunity by voluntarily removing an action to federal court when it would have been immune from the same action in state court." 393 F.3d at 487. Although

11

the *Stewart* panel recognized that "*Lapides* addresses whether a state that removes an action to federal court having already consented to suit in its own courts can invoke sovereign immunity[,]" it also recognized that *Lapides* does not resolve the issue presented in this case, namely, "whether a state that has not consented to suit in its own courts maintains" its immunity "upon voluntarily removing a case to federal court." *Id.* at 488.

The *Stewart* panel also noted that the Supreme Court's holding in *Lapides* was based largely on the desire to avoid or minimize "the risk of inconsistency and unfair tactical advantage" that might arise if a state could raise sovereign immunity arguments waived under state law in federal courts after removal. Because North Carolina "did not seek to *regain* immunity that it had abandoned previously" by removing the case "and then invoking sovereign immunity," the Fourth Circuit panel held that there was nothing "inconsistent, anomalous, or unfair" about North Carolina's litigation tactics. *Id.* at 490. Therefore, it held "that North Carolina, having not already consented to suit in its own courts, did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question." *Id.*

In contrast, the plaintiffs rely upon *Meyers v. Texas*, 410 F.3d 236 (5th Cir. 2005).[5] In *Meyers*, the Fifth Circuit considered whether Texas waived its sovereign

---

[5] The plaintiffs also cite *Embury v. King*, 361 F.3d 562 (9th Cir. 2004). In *Embury*, the Ninth Circuit "conclude[d] that the rule in *Lapides* applies to federal claims as well as to state law claims and to claims asserted after removal as well as to those asserted before removal." 361 F.3d at 564. Therefore, like *Meyers*,

12

immunity from federal claims when it removed a case from state court to federal court. Because *Meyers* dealt with waiver and sovereign immunity issues involving federal rather than state claims, it is not directly on point with either this case or *Stewart*. *See, e.g.*, *Meyers*, 410 F.3d at 249 (recognizing that "*Stewart* does not bind us or directly bear on removal of federal law claims"). Nevertheless, the Fifth Circuit panel in *Meyers* addressed the Fourth Circuit's holding *Stewart* because it concluded that *Stewart*'s "rationale misconstrues important principles animating *Lapides*." *Id.*

Although the *Meyers* panel recognized that "the Supreme Court in *Lapides* circumspectly did not address any issue unnecessary to its decision," it nonetheless held that "*Lapides*'s interpretation of the voluntary invocation principle, as including the waiver-by-removal rule, applies generally to any private suit which a state removes to federal court." 410 F.3d at 242. More specifically, the *Meyers* panel traced the evolution of the "voluntary invocation principle," according to which "a state submits itself to federal court jurisdiction when it voluntarily appears, intervenes, files a claim, or becomes a party to a cause in federal court." *Id.* at 245.

According to the *Meyers* panel, the Supreme Court's holding in *Lapides* represented a return to a broad understanding of the "voluntary invocation principle," which should "appl[y] generally *in all cases* for the sake of consistency,

---

*Embury* also articulates a broad reading of *Lapides*, but it does not provide any reasons beyond those articulated in *Meyers* to reject the reasoning of *Stewart*.

13

in order to prevent and ward off all actual and potential unfairness, whether egregious or seemingly innocuous." 410 F.3d at 249 (emphasis added). Furthermore, the *Meyers* panel argued that "[t]he voluntary invocation principle and the waiver-by-removal rule as explained in *Lapides* evolved not merely to quantify and compare *actual* unfair advantages but to eliminate the *potential* of unfairness by the enforcement of clear jurisdictional rules having genuine preventive effect." *Id.* at 250. Therefore, the panel held that "North Carolina in *Stewart*, and Texas [in *Meyers*,]" – and the plaintiffs would argue, by extension, LFUCG in the case at hand – "acted inconsistently by both invoking federal jurisdiction and claiming immunity in the same case." *Id.* at 349.

  This court recognizes the appeal of this interpretation of *Lapides*. But with all due respect to the learned panel in *Meyers*, this court fails to see how removal creates even the "*potential* for unfairness" in this case or in other similar cases. No arcane points of federal law are involved in the substantive sovereign immunity analysis applied to plaintiffs' state law claims in this and in other similar matters; rather, this court simply looks to the Kentucky legislature and to Kentucky courts to determine whether the relevant Kentucky laws have waived LFUCG's sovereign immunity. Moreover, the Sixth Circuit has provided straightforward guidelines about when sovereign immunity is waived by litigation conduct in *Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469 (6th Cir. 2006), and *Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003). More specifically, the Sixth Circuit

14

has indicated that sovereign immunity arguments should probably be treated as waived if they are not presented "as a threshold defense, usually by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure . . . ." *Nair*, 443 F.3d at 476. This standard removes even the possibility that a defendant such as LFUCG could achieve some potential tactical advantage by raising sovereign immunity arguments long after removal.

Perhaps more importantly, there is nothing inconsistent about allowing LFUCG to raise the same unwaived sovereign immunity arguments that it would presumably have raised in state court had it not removed this case to federal court. Indeed, the need for judicial consistency would seem to demand that this court *must* allow LFUCG to raise these sovereign immunity arguments after removal; otherwise, the court's findings about LFUCG's sovereign immunity in this case would presumably be very different from a Kentucky court's findings in a substantively identical case that LFUCG did not remove, or worse, this court's own findings in a substantively identical case originally filed by the plaintiffs in federal court. In any event, this court is not willing to adopt the broad reading of *Lapides* provided in *Meyer* without the clear direction of the Sixth Circuit. Accordingly, adopting the reasoning of the Fourth Circuit in *Stewart*, this court finds that LFUCG did not waive its sovereign immunity defense to the plaintiffs' Kentucky law claims when it removed this case.

**III.    The Plaintiffs' Motion for the Rule 23 Class Action and the FLSA Collective Action To Proceed Simultaneously**

15

For the reasons provided above, the court finds that the plaintiffs' state law claims are barred by Kentucky sovereign immunity law. Thus, the plaintiffs may not pursue the "opt-out" class certification process provided by Rule 23 because their only remaining claims for relief rely upon the FLSA, and Rule 23 "opt-out" class certification is inappropriate for FLSA claims. *See Lusardi v. Lechner*, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988) (stating that "[c]ourts have generally recognized that Rule 23 class actions may not be used" for violations of the FLSA); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam) (stating that "[i]t is crystal clear that" 29 U.S.C. § 216(b) "precludes pure Rule 23 class actions in FLSA suits"). Therefore, the court's order moots the plaintiffs' motion for permission for the Rule 23 class action and the FLSA collective action to proceed simultaneously (DE 38). Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss the plaintiffs' state law claims (DE 40) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for permission for the Rule 23 class action and the FLSA collective action to proceed simultaneously (DE 38) is **DENIED** as **MOOT**.

Signed on January 9, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY