UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-299-JBC

JUSTIN CRAWFORD, ET AL., PLAINTIFFS,

V.          **MEMORANDUM OPINION AND ORDER**

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the the plaintiffs' amended motion to certify a collective action under the FLSA and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, or, in the alternative, to grant conditional certification of its collective action under the FLSA and to order issuance of notice to the class members (DE 6, DE 47).  In support of this motion, the plaintiffs submitted a collection of survey responses from several putative class members, *see* DE 53-4 through 53-8, and during a hearing, the plaintiffs moved to have these survey responses admitted as an exhibit.  The defendant objects to the admission of these survey responses on the ground that they are inadmissible hearsay.

After reviewing the parties' arguments, the court will grant the plaintiffs' motion and conditionally admit the surveys attached to the plaintiffs' reply.  Having reviewed the record and being otherwise advised, the court will grant the plaintiffs' motion for conditional certification of the collective action under the FLSA (DE 6,

DE 47). The court will also grant the plaintiffs' motion to order issuance of notice to the potential members of the collective action group. Because the court, in a separate order (DE 85), has dismissed the plaintiffs' state law claims, the court will deny as moot the plaintiffs' motion to certify a class action pursuant to Rule 23 (DE 6, DE 47).

I. BACKGROUND

The plaintiffs are current and former employees of the defendant, the Lexington-Fayette Urban County Government ("LFUCG"), at LFUCG's Division of Community Corrections ("DCC"). In their complaint, the plaintiffs allege that "the DCC has engaged in long-standing, widespread, and multiple violations of the Fair Labor Standards Act . . ., 29 U.S.C. § 201, et seq., and of the Kentucky Wages and Hours Act . . ., KRS Chapter 337." (DE 48-3 at 5.) Pursuant to 29 U.S.C. § 216(b), the plaintiffs seek to pursue their FLSA claims as a collective action. *Id.* at 25.

II. ANALYSIS

A. The Admissibility of the Plaintiffs' Exhibit

On January 2, 2007, the plaintiffs filed their reply (DE 53) in support of their motion for class and conditional certification, to which was attached "Exhibit B," the subject of the admissibility dispute currently before the court. Exhibit B is based on a survey in the form of a chart, which purports to describe various DCC employment practices. Next to the description of each employment practice, the

survey chart provides space for the survey participant to indicate whether she is "currently, or ever ha[s] been, subject to any of these practices for any length of time or on any occasion." *See* DE 53-6 through DE 53-8.  At the top of the survey chart are blanks which allow the survey participant to indicate her name, rank, length of employment at the DCC, as well as the shifts she has worked and the areas to which she has been assigned.  In all, Exhibit B contains over a hundred of these completed surveys, along with a summary spreadsheet and an affidavit from a paralegal with the plaintiffs' law firm, which avers that the spreadsheet "summariz[es] all responses to [the] survey conducted by our firm received from putative class members in the above action."  (DE 53-4 at 1.)

At a hearing before this court, the plaintiffs moved for Exhibit B to be admitted as an exhibit.  LFUCG objects to the admission of Exhibit B, arguing that it is inadmissible hearsay.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" and in general, it is not admissible at a trial or hearing unless a specific exception applies.  Fed. R. Evid. 801(c), 802.  As LFUCG points out, "courts . . . have repeatedly held that only admissible evidence may be considered in connection with a [29 U.S.C.] § 216(b) motion." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005) (citing *Richards v. Computer Sci. Corp.*, No. 03-630, 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004), and *McElmurry v. U.S. Bank Nat'l Ass'n*, No. 04-642, 2004 WL 1675925,

at *10 (D. Or. July 27, 2004)); *see also Clark v. Dollar Gen. Corp.*, 00-729, 2001 WL 878887, at *2 (M.D. Tenn. May 23, 2001).

In response, the plaintiffs cite *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363 (E.D. Tenn. 2006). In *White*, the district court considered several affidavits provided by current and former employees of the defendant which were submitted along with a motion for conditional certification. The defendant in *White* moved to strike several portions of the affidavits as "inadmissible hearsay in violation of the standard set forth for affidavits in Federal Rule of Civil Procedure 56(e)." 236 F.R.D. at 367-68. Under Rule 56(e), affidavits submitted in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Citing *Harrison*, *Richards*, *McElmurry*, and *Clark*, the district court in *White* recognized that "[t]here is certainly support for [the defendant's] position that the standard in Rule 56(e) applies not only to affidavits in support of motions for summary judgment but also to affidavits submitted in support of a motion for conditional certification." 236 F.R.D. at 368. But after comparing the purposes behind Rule 56 with the purposes behind the conditional certification process for collective actions under the FLSA,[1] the district court in *White* held that "'at this

---

[1] The district court in *White* found that "[r]equiring admissible evidence at the summary judgment stage is logical: there is a possibility that trial will be

4

preliminary stage and for these preliminary purposes'" of conditional certification, "'plaintiffs need not come forward with evidence in a form admissible for trial.'" *Id.* (quoting *Coan v. Nightingale Home Healthcare, Inc.*, No. 05-101, 2005 WL 1799454, at *1 n.1 (S.D. Ind. June 29, 2005)).  More specifically, although the district court in *White* "recognize[d] the value of requiring some factual support for allegations of class-wide practices" at the conditional certification stage in FLSA actions, it found "that such factual support need not meet the evidentiary standards set forth in Rule 56(e)." 236 F.R.D. at 368.  Accordingly, the district court in *White* declined to strike any portions of the affidavits in question on hearsay grounds.  *Id.*  This court finds the *White* analysis persuasive.

LFUCG distinguishes the affidavits at issue in *White* from the surveys that make up Exhibit B in this case because the surveys are not sworn statements.  But *White*'s analysis and reasoning depend upon the nature of the proceeding and not upon whether the evidence is sworn.  For example, as the district court in *White* observed, "motions for conditional certification occur at a much earlier stage in the litigation process" than most dispositive motions, such as summary judgment, and they "normally are made when discovery is in its nascent stages." 236 F.R.D. at 368.  Therefore, requiring a plaintiff to present evidence in favor of conditional

---

avoided by the result, so courts should decide the motions based on evidence that would be admissible at trial, if one were held." *White*, 236 F.R.D. at 368.  But the district court in *White* also found that "[t]here is . . . no corresponding possibility of final disposition at the conditional certification stage: whether a motion for conditional certification is granted or denied, the case proceeds with discovery." *Id.*

certification that meets the hearsay standards of the Federal Rules of Evidence "fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis for his case." *Id.* Moreover, "although many courts require some factual support for" allegations that conditional certification is warranted, "other courts hold that a plaintiff can meet his burden based solely on the allegations in the complaint." *Id.* (citing *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996)). Accordingly, because some courts will conditionally certify collective actions under the FLSA based "solely on the allegations in the complaint[,]" courts which do require some factual support for conditional certification should take a relaxed approach to evidentiary standards they impose on the factual support provided at this stage. *White*, 236 F.R.D. at 368.

The reasoning of the district court in *White* is reinforced by a consideration of several provisions of the Federal Rules of Evidence. Rule 1101 governs the general applicability of the Rules of Evidence, and according to Rule 1101(d)(1), the Rules do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104." Rule 104, in turn, gives the court "the authority to issue a preliminary ruling on the admissibility of evidence." *Colorado Nat'l Bank v. First Nat'l Bank & Trust Co.*, 459 F. Supp. 1366 (D.C. Mich. 1978). More specifically, Rule 104(a) provides that "[p]reliminary questions concerning . . . the admissibility of evidence

shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privilege." Rule 104(b) provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Of all the preliminary determinations under Rule 104, perhaps the most relevant for this matter is the procedure by which a district court conditionally admits the statements of coconspirators. Pursuant to Rule 104, the court may conditionally admit a coconspirator's statement and require the government to subsequently prove that the statement meets all conditions for admissibility under Rule 801(d)(2)(E) as "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."[2] *See United States v. Meyers*, 646 F.2d 1142, 1146 (6th Cir. 1981).

The court finds that the two-step conditional certification process for collective action claims under the FLSA, discussed in greater detail below, is analogous to the conditional admission process for coconspirator statements. It bears repeating that there is no "possibility of final disposition at the conditional certification stage: whether a motion for conditional certification is granted or

---

[2] This court is aware that coconspirators' statements are not admitted as a hearsay exception; rather, such statements are not hearsay at all. It is the process of their admission, and not the nature of such statements, which is instructive here.

7

denied, the case proceeds with discovery." *White*, 236 F.R.D. at 368. Thus, the conditional admission of evidence offered in support of the conditional certification of collective actions under the FLSA creates neither expense nor delay; rather, it promotes the "growth and development" of admissible evidence in such proceedings "to the end that the truth may be ascertained and proceedings justly determined." Fed. R. Evid. 102. Therefore, the court will adopt the following rule: When, after both sides have conducted discovery, the defendant moves for decertification in the FLSA collective action, the plaintiffs must demonstrate that any evidence conditionally admitted during the conditional certification process is admissible under the Federal Rules of Evidence.

In adopting this rule, the court does not give plaintiffs a blank check to submit factual support of any kind for the purposes of conditional certification. Rather, by conditionally admitting only that evidence which can be tested during a subsequent decertification hearing, the court ensures that certain minimum standards will always be met. For example, as Rules 1101 and 104 make clear, privilege always applies, even for preliminary questions of fact, and therefore the instant plaintiffs may not submit evidence that is privileged to support conditional certification of an FLSA collective action. Moreover, only hearsay evidence purportedly within the personal knowledge of the hearsay declarant – which can be tested by subsequent testimony or deposition after discovery – will be conditionally admitted for the purposes of conditional certification. Accordingly, the court will

8

adopt the reasoning of *White* and conditionally admit the plaintiffs' Exhibit B for the purposes of conditional certification.

> **B.    The Plaintiffs' Motion for Conditional Certification Under the FLSA**

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing . . . ." 29 U.S.C. § 216(b). Plaintiffs who seek to certify a collective action under the FLSA "bear the burden to establish that they and the class they wish to represent are similarly situated." *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (D.C. Ala. 1999).  Plaintiffs can meet this burden by showing that there is a "reasonable basis for crediting their assertions that other aggrieved individuals exist in the broad class that they propose." *Id.*  More specifically, they must show only that their positions and those of the group they seek to represent are "similar, not identical, to the positions held by the putative class members." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006) (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).

"Courts have generally adopted a two-tiered certification approach for deciding whether a suit can proceed as a collective action" under the FLSA. *Harrison*, 411 F. Supp. 2d at 864; *see also Comer*, 454 F.3d at 546-47 (holding that a district court order "bifurcating discovery was consistent with the approach

typically used by courts in suits filed under 29 U.S.C. § 216(b)"). First, courts generally "determine whether notice of the pending action and the opportunity to 'opt-in' should be given to potential class members." *Harrison*, 411 F. Supp. 2d at 864-65. This first step is known as "'conditional certification' of the collective action." *Id.* at 865. After notice has been given to the potential plaintiffs and "after discovery has been completed, and the case is ready for trial, the court will engage in the second stage of determining whether the plaintiffs are similarly situated for the purposes of maintaining the collective action." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001).

Conditional certification should be granted, and notice to prospective co-plaintiffs should be authorized, if the named plaintiff "demonstrates that she is 'similarly situated' to the other employees she seeks to notify of the pendency of the action." *Harrison*, 411 F. Supp. 2d at 864-65. "Once discovery is complete and more factual information is available to the court, the defendant may file a motion to decertify the class[,]" and at this second stage, "the court uses a higher standard to analyze the similarly situated issue." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000) (citing, inter alia, *Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1080 (D. Kan. 1998), *class decertified in Thiessen v. Gen. Elec. Capital Corp.*, 13 F. Supp. 2d 1131 (D. Kan. 1998)). Because a decision to grant conditional certification is "by no means final . . . a conditional order approving notice to prospective co-plaintiffs in a suit under [29 U.S.C.] § 216(b) is

not appealable." *Comer*, 454 F.3d at 546, 549; *see also Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930 (5th Cir. 2005) (holding that an order conditionally certifying a collective action under 29 U.S.C. § 316(b) was not appealable because it was not a final decision).

Generally speaking, at the first stage of conditional certification "courts 'require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Rodolico*, 199 F.R.D. at 480 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 399 (D.N.J. 1989)). More specifically, at this first stage, a named plaintiff must provide only a "'modest factual showing'" to demonstrate that she is similarly situated to her proposed co-plaintiffs, and the court's review of this modest showing "is made using a fairly lenient standard," which "typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (quoting *Pritchard*, 210 F.R.D. at 596, and *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Harrison*, 411 F. Supp. 2d at 865 (stating that most courts agree that the standard for conditional certification is "fairly lenient" and that only a "modest factual showing" is required); *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 605-06 (S.D. Tex. 2005) (stating that the initial conditional certification determination is usually made using a fairly lenient standard, which typically results in conditional certification of a representative class).

Courts that require a factual showing at this first stage "have considered 'factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted,' and whether 'as a matter of sound class management, a manageable class exists.'" *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (quoting *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999), and *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991)). Once a group of plaintiffs has made such a showing, the court should conditionally certify the group, "authorize [the plaintiffs] to proceed with this action as a 'collective action[,]'" and "allow [the plaintiffs] to notify putative class members of the pendency of this suit." *Id.*

LFUCG argues that the plaintiffs have failed to show that their proposed FLSA collective action is entitled to conditional certification. More specifically, LFUCG alleges that "numerous Plaintiffs testified that there was no policy or procedure with respect to breaks or compensation for breaks and that how employees are treated . . . depends entirely on particular Commanders and particular shifts in particular bureaus." (DE 52-2 at 40.) Therefore, LFUCG argues that the plaintiffs have failed to carry their burden of showing that the putative members of the collective action are similarly situated. *Id.* (citing, inter alia, *Harrison*, 411 F. Supp. 2d at 870, in which a district court held that a plaintiff had failed to show that other employees were similarly situated because she submitted

12

only two affidavits in support of her argument).  Moreover, LFUCG claims that conditional certification in this case is far more complex than the conditional certification presented in cases such as *Comer*, because the plaintiffs have proposed a collective action group involving nine sub-classes and numerous, disparate liability claims.[3]  *Id.* at 41-42.

Contrary to LFUCG's claims, the plaintiffs' proof is more robust than the two affidavits presented in *Harrison*.  The plaintiffs in this case, like the plaintiffs in *De Luna-Guerrero v. North Carolina Grower's Ass'n*, 338 F. Supp. 2d 649, 655 (E.D.N.C . 2004), have bolstered their claims with evidence provided by the named plaintiffs regarding the DCC policies at issue in this case.  More specifically, the

---

[3]  LFUCG suggests that this case is similar to *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002), and to *Dudley v. Texas Waste Systems, Inc.*, No. 05-078, 2005 WL 1140605 (W.D. Tex. May 16, 2005).

In *Sheffield*, a district court denied conditional certification for a proposed collective action under the FLSA because it "would be mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact."  211 F.R.D. at 413.  The district court's determination in *Sheffield* was based, however, on the fact that the employees and putative collective action members "ha[d] been employed by different subsidiaries and affiliates" of the defendant and had "worked at nine different job sites."  *Id.*  In fact, the district court in *Sheffield* noted that the sole unifying theory for the plaintiffs was that the "defendant [had] acquired many smaller companies" that may have committed "potential wage and hour violations" of which the defendant may have been aware.  *Id.*  None of these factors are significant in the case at hand, and therefore, *Sheffield* is inapposite.

In *Dudley*, a district court denied conditional certification for a proposed collective action because it found that the plaintiff had failed to present any evidence "refuting [the defendant's] written policy that employees were admonished to take their lunch breaks."  2005 WL 1140605, at *2.  The plaintiffs in this case, however, have presented evidence that the defendant's actual policy was to admonish employees to document breaks even if they were unable to take their breaks.  Therefore, *Dudley* is also inapposite.

13

plaintiffs have supported their claim that the members of the proposed collective action group are similarly situated with citations to the depositions of the named plaintiffs. For example, several named plaintiffs have testified that the DCC has or had a common policy or protocol that all employees are expected to perform uncompensated work during some or all of their breaks. *See, e.g.*, Grillo Dep. at 126-27 (stating that it is "common knowledge" imparted during training that officers are "not completely relieved of . . . work duties even on . . . break"); Johnson Dep. at 59-60 (stating that a request to be paid for time spent working during a break would be a breach of "protocol" and viewed as "insubordinate, inefficient[,]" and possibly "misconduct"); Vannatta Dep. at 114 (stating that "we've always worked on our break, and that's the way it's been since I've worked there" and that "[t]o my knowledge, none of us get breaks or none of us – we all run errands on our breaks"). Similarly, multiple named plaintiffs have testified that the DCC has or had a common policy that all employees are expected to eat "on the run" or "on the fly" at least some of the time. *See, e.g.*, 2 Crawford Dep. at 138-39 (stating that the common practice or policy at the DCC is that employees work through lunch and do not get compensated for it); Grillo Dep. at 67-69 (stating that "it's common knowledge that" supervisors "deter" subordinate employees from requesting payment for working through a meal break and that "it would be very hard for" employees who did make such a request to get their payment); Johnson Dep. at 123-24 (stating that "the common practice and

protocol understanding is that" seeking to recover compensation for working through the lunch period "would not be accepted" because it is viewed as time for which the employees are "being already paid for [their] duty"). These and other deposition excerpts support the plaintiffs' claim that the DCC imposed uniform or near-uniform policies which created causes of action under the FLSA for both the named plaintiffs and their similarly situated DCC co-workers. Accordingly, the plaintiffs have met the modest, lenient standard required for conditional certification of an FLSA collective action.

In addition, LFUCG argues that the putative members of the collective action group are not similarly situated because of the potential existence of separate defenses, spread across multiple potential sub-classes. But "[t]he existence of separate defenses does not necessarily mean that the plaintiffs are not similarly situated." *Rodolico*, 199 F.R.D. at 484. As in *Rodolico*, this court finds that at this point in the litigation,"standing alone, the prospect of individual defenses should not defeat authorization of a collective action in this case." 199 F.R.D. at 484. The arguments raised by LFUCG "are of the sort that are appropriate for consideration during the second-stage analysis, and not during the initial 'notice' stage." *Clarke*, 370 F. Supp. 2d at 607; *see also White*, 236 F.R.D. at 367 (quoting *Thiessen*, 267 F.3d at 1103, and stating that "'disparate factual and employment settings[,]" the existence of multiple defenses "'which appear to be individual to each plaintiff[,]'" and procedural and fairness considerations "should

15

be reviewed during the second stage analysis"). If, after further discovery, this court "finds that a collective action cannot accommodate the proposed individual defenses," then this court "has the discretion to create subclasses or to dismantle the collective action." *Rodolico*, 199 F.R.D. at 484. But LFUCG has not shown that the potential for subclasses provides a reason to deny the plaintiffs' motion for conditional certification, and at any rate, the plaintiffs have submitted evidence which tends to suggest that the court will not have to create an unmanageable number of subclasses. For example, according to Exhibit B, 95% of the survey respondents indicated that they have missed breaks, 84% of the survey respondents indicated that they have missed a meal, 78% of the survey respondents indicated that they have worked during their breaks, and 80% of the survey respondents indicated that they have worked during their meal. *See* DE 53-5 at 6. While some of the claims and defenses in this case may require the creation of subclasses, these preliminary results suggest that many – and perhaps most – members of the collective action group share a few central claims.

In conclusion, the primary objectives of an FLSA collective action "are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Moss v. Crawford & Co.*, 201 F.R.D. at 410 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Because the plaintiffs have met the modest standard of presenting facts

supporting "'a common legal theory upon which each member is entitled to relief[,]'" the court finds that the purposes behind the FLSA will be served by conditionally certifying the putative collective action. *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (quoting *Sheffield*, 211 F.R.D. at 413). Accordingly,

**IT IS ORDERED** that the plaintiffs' motion to conditionally certify this suit as a collective action under the FLSA (DE 6, DE 47) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to order issuance of notice to the potential members of the collective action group is **GRANTED**. The plaintiffs are directed to submit their proposed notice within ten (10) days of the entry of this order. The defendants may respond to the content of the proposed notice under the time period provided by the Local Rules. The plaintiffs may then reply to the defendants' response under the time period provided by the Local Rules.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to certify this suit as a class action under Rule 23 of the Federal Rules of Civil Procedure (DE 6, DE 47) is **DENIED** as **MOOT**.

Signed on January 26, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY